STATE of Missouri, Respondent,

v.

Joseph John **TARANTOLA**, Appellant.

No. 55085.

Supreme Court of Missouri,
Division No. 2.

Jan. 11, 1971.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Kenneth I. Grissinger, Kansas City, for appellant.

STOCKARD, Commissioner.

Appellant Joseph John Tarantola, found guilty by a jury of robbery in the first degree and sentenced to imprisonment for a term of eight years, has appealed to this court. There is no contention that a submissible case was not made, and the facts of the robbery are not essential to the determination of the issues on appeal. However, we shall set them forth in summary form to place the issues in proper perspective.

On September 20, 1968, Milton Jackson, a salesman of jewelry and diamond products bearing a trademarked name of Prism-Lite, left his Cadillac automobile on Tenth Street in Kansas City in the care and custody of his chauffeur, George W. Brown, while he entered the place of business of a prospective customer. According to the State's evidence, appellant approached the automobile and squirted or threw something into the eyes of Mr. Brown which temporarily blinded him, and after forcing Mr. Brown out of the automobile appellant drove it away. In the trunk of the automobile was a sample case containing diamonds and jewelry of the value of approximately $150,000. About an hour later Robert Watson, a window washer, saw appellant park the Cadillac automobile in the parking lot of his employer in an area referred to as the "bottoms," and then carry a suitcase to where he was picked up by a person driving a white automobile. Following an investigation of the case by FBI agents and local police, appellant was arrested at the home of his father-in-law where he was living, and in the back yard the police officers found in some burning trash various items bearing the Prism-Lite label. The house was also searched pursuant to a search warrant and items were found which had been taken in the robbery. However, before trial appellant filed a motion to suppress as evidence the items found in the house and also the items found in the burning trash. After a hearing the trial court overruled the motion to suppress, but as to the items seized in the house

it held, somewhat inconsistently, that the search warrant was invalid. At trial none of those items found in the house was offered in evidence, but the items found in the burning trash were offered and received in evidence, and appellant now asserts that the admission of that evidence was prejudicially erroneous on the basis that it was obtained as the result of an illegal search and seizure. We shall set forth in considerable detail the evidence presented at the hearing on the motion to suppress.

After the police had located the Cadillac automobile where it had been abandoned, Robert Watson identified a photograph of appellant as the person who had parked it there. The police went to the home of Phillip Catalano at 513 Shady Drive in Clay County where they had reason to believe appellant could be found. Two officers went to the back yard of the house to prevent anyone from leaving the house from the back door, and two or three officers went to the front door. When the officers knocked on the front door Mrs. Catalano answered, but did not open the door. She talked to the officers through the door and denied that appellant was in the house and she said that he did not live there. Later Mr. Catalano came to the door and he stated that appellant was not in the house. After this discussion had continued for awhile, Phyllis Catalano, a daughter of Mr. and Mrs. Catalano ran from the house screaming and crying. The substance of what she said was that appellant was in the basement of the house, that he "did it" and she knew he would be caught, and that the stolen jewelry had been divided with another person. A few minutes later, it then being about seven o'clock, appellant came to the front door of the house. He was placed under arrest by Sergeant Zismer, a Clay County police officer, and advised of his constitutional rights. The officers asked permission to search the house, but Mrs. Catalano refused. Sergeant Zismer then called Charles Sales, Jr., Captain of the Clay County Sheriff's Patrol, who talked to the officers at the house and left to obtain a

search warrant, which was obtained and the house subsequently searched. Property identifiable with the robbery was found, but since none of it was introduced in evidence, we need not relate any further facts pertaining to that search and seizure.

After Captain Sales left to obtain the search warrant but before he returned, and while appellant was in custody, Detective McLaury, as he testified, needed to urinate, and since the officers were denied access to the house he went to the back yard "where Detective Wilson was" for that purpose. The officers had remained at the house while waiting for Captain Sales to return, obviously to prevent the occupants of the house from removing any stolen property therein before the house could be searched. While in the back yard Detectives McLaury and Wilson saw a smoldering fire in a fenced area constructed for use as a dog pen but then being used as a place to burn trash. Although the fire was inside the dog pen, it was open to view of anyone in or near the back yard. Detective McLaury investigated the fire, and he found in the smoldering debris various items, not yet destroyed by the fire, which had the Prism-Lite label, and which the police officers had reason to believe had been taken in the robbery and had been placed in the burning trash for the purpose of destruction. These items which the police officers removed from the smoldering fire were later offered and received in evidence at appellant's trial.

■ Appellant first asserts that his "arrest * * * was not lawful and was without probable cause." This contention apparently is presented on the theory that a search was made of that part of the premises consisting of the dog pen in the back yard as an incident to a lawful arrest, and that until the officers found the items in the smoldering fire they did not have reasonable grounds to believe that appellant had committed a felony. However, the arrest of appellant was made *before* the items in the back yard were seen or seized by the police officers. Therefore, the basis

for the arrest was not in any way premised on that discovery. In addition, as demonstrated by the above recitation of facts, at the time of the arrest the police officers were possessed of knowledge which constituted reasonable cause to believe that appellant was guilty of a recent felony, robbery, and for that reason the arrest without a warrant was based upon probable cause within the meaning of Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. See also Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327; State v. Johnson, Mo., 420 S.W. 2d 305; and State v. Novak, Mo., 428 S. W.2d 585. We find no merit to the contention that the arrest was unlawful on the ground that it was made without probable cause.

■ Appellant's remaining point is that the "search was not reasonably incident to the arrest; the search violated §§ 542.260 and 542.280," RSMo 1969 [V.A.M.S.].

We first note that the cited and referred to statutes pertain to the authority of a magistrate to issue a warrant for the search of a house or place for stolen or embezzled property, and under what circumstances the search may be made at nighttime, but that now the applicable provisions pertaining to the issuance of a search warrant are set forth in Supreme Court Rule 33, V.A. M.R.

Apparently appellant contends that the provisions pertaining to the issuance of a search warrant were violated because no warrant describing the property was obtained. In fact, no such warrant was sought, and the discovery of the items in the fire, and their seizure, occurred before Captain Sales returned with the warrant which was obtained. Therefore, the search, if it can be said that a search occurred, and the seizure were not made pursuant to a search warrant. If the taking of possession by the police officers of the items found in the fire can be justified it must be on some basis other than that the seizure was pursuant to a warrant.

We first note that the seizure of the items from the burning trash occurred prior to the date of Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685, and the restrictive rules there announced are not applied retroactively by this State. State v. Norris, Mo., 460 S.W. 2d 672. See also United States v. Bennett, 2 Cir., 415 F.2d 1113, and United States v. Blassick, 7 Cir., 422 F.2d 652. The search, if there in fact was a search, which resulted in the discovery and seizure of the items from the smoldering fire was made as an incident to a lawful arrest. However, in view of possible application and the restrictive implications of Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409, we prefer not to base our disposition of this issue solely on the principle of a search made as an incident to a lawful arrest.

We shall assume that the area of the dog pen was within the common law definition of the curtilage, see State v. Buchanan, Mo., 432 S.W.2d 342, and that appellant had proper standing to raise the issue of an unlawful search or seizure. Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233. However, Detectives Wilson and McLaury were lawfully on the premises, and lawfully in the back yard. They had gone to the Catalano residence to arrest appellant based upon probable cause that he had committed a recent felony. After the arrest they had reasonable grounds to believe that some of the property taken in the robbery was in the house and they remained in the yard or within what might be called the curtilage awaiting a search warrant. It is immaterial that it subsequently developed that the search warrant was not properly obtained. The officers were entitled to assume it would be proper, and as a part of their official duties as police officers it was incumbent on them to see that the stolen property, which they reasonably believed to be in the house, was not removed prior to the time it could lawfully be seized and preserved as evidence. In order to accomplish this they could remain on the premises within the curtilage, which included the back yard of the house. As stated in State v. Gott, Mo., 456 S.W.2d 38, " 'a police officer entering upon land in performance of his lawful duty is a licensee * * * the license being conferred by law.' " In this case, the items subsequently seized were in the open view and were apparent to any one in the back yard, and if "their [the officers'] presence was lawful, the observation of what was then and there immediately apparent could not in itself be a wrong." United States v. Horton, 3 Cir., 328 F.2d 132, 135. See also, Davis v. United States, 9 Cir., 327 F.2d 301; Ellison v. United States, 206 F. 2d 476, 93 U.S.App.D.C. 1; State v. Gott, supra. In fact, under these circumstances, it cannot reasonably be said that a search occurred. Davis v. United States, supra, United States v. Lee, 274 U.S. 559, 47 Sup.Ct. 746, 71 L.Ed. 1202; State v. Hawkins, Mo., 240 S.W.2d 688.

The basic question presented is whether, after the officers saw the items in the fire they could then be seized without a warrant. In our opinion they could for two reasons. First, the property had been abandoned when the items had been placed in the open area in a fire for the obvious purpose to bring about their destruction. United States v. Martin, 3 Cir., 386 F.2d 213; United States v. Minker, 3 Cir., 312 F.2d 632; Coleman v. Maxwell, 6 Cir., 387 F.2d 134. Second, in any event, at the time the items were lawfully discovered by the police, they were in the process of being destroyed. "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search [and seizure] may be dispensed with," and one such exceptional circumstance therein set out is the attempted destruction of the evidence. Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440. See also, Schmerber v. State of California, 384 U.S. 757, 770–771, 86 S.Ct. 1826, 16 L. Ed.2d 908; United States v. Jeffers, 342

U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Vale v. State of Louisiana, supra.

We conclude that there was no unlawful search and seizure of the items taken from the smoldering fire, and it was not prejudicially erroneous to admit those items into evidence.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.