**STATE of Missouri, Respondent,**

v.

**Terry COBB, Appellant.**

No. 55101.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Stemmons & Hager, Robert Stemmons, Mt. Vernon, for appellant.

BARDGETT, Judge.

Terry Cobb was convicted by a jury of murder in the first degree. The jury did not agree on punishment and the Court sentenced Cobb to death. Judgment was rendered accordingly and Cobb appeals.

Appellant was charged by information with murder in the first degree in common form of Richard Ferguson. The deceased, age 18, was a service station attendant at a Texaco station located a short distance southwest of the intersection of I–44 and Route O, a north-south road, in Lawrence County, Missouri. He was found dead at about 1:30 AM on the morning of Saturday, March 15, 1969, on the service station property.

This is a companion case to State v. Stancliff, Mo., 467 S.W.2d 26, in which the conviction of Lucky Vance Stancliff of murder in the first degree and the sentence of life imprisonment were affirmed. The evidentiary details of the robbery of the service station and the homicide are set forth in the *Stancliff* opinion and need not be repeated here except to the extent necessary to a resolution of the points raised in this appeal.

Suffice it to say that deceased met his death as a result of being shot with .22 and .25 caliber bullets; the .22 and .25 caliber automatic handguns that fired the bullets were recovered along Route O about 1½ to 2 miles south of the Texaco station during the daylight hours of Sunday, March 16, 1969; that empty .22 and .25 shell casings were found in appellant's back yard at about 1:30 AM on Sunday, March 16, 1969, during the time that appellant was being arrested for the said robbery and homicide; that it was established by evidence that the guns found along Route O fired the shells found in appellant's back yard and the bullets removed from the body of the deceased and the .22

and .25 caliber shells which were found on the ground around the deceased.

As stated, supra, appellant was arrested in his home at about 1:30 AM on Sunday morning, March 16, 1969. The arrest was made on the order of Sheriff Quade of Lawrence County, Missouri, and carried out by several of his deputies and other law enforcement officers. Deputy Sheriff Dunton was one of these officers. When Dunton arrived at appellant's home, he and two other officers were directed to cover the back door of the Cobb house in order to prevent possible escape out that door, while Deputy Stockton and others went to the front door. Stockton knocked on the front door and it was answered by Mrs. Cobb. Appellant appeared shortly thereafter and was arrested by Stockton. Dunton observed Cobb by looking through the window in the back door and, when Dunton saw Cobb, Dunton then went around to the front door and into the house. Before leaving the back door and going to the front door, Dunton observed shell casings on the ground around the back porch. After Dunton went into the house he was told by Deputy Stockton to search the premises outside the house. Dunton went back toward the rear porch and picked up .22 and .25 caliber shell casings, some of which he had previously seen. He saw some shell casings by the lights which had been turned on in the house and others by using his flashlight. The .22 and .25 caliber shell casings found by Dunton, which were within about 30 feet or so of the back porch, were introduced into evidence and formed the basis for the ballistics expert's testimony that the same guns used to kill the deceased also fired the shells found in Cobb's back yard. The shells found by Dunton were lying upon virtually bare ground and open to the view of anyone on the premises.

There had been no arrest or search warrant issued prior to the time of this arrest. Appellant filed a motion to suppress these .22 and .25 caliber shell casings on the grounds that they were obtained by an un-

lawful search and seizure in violation of appellant's rights under the U.S.Constitution, Amendments 4, 5 and 14, and Mo. Constitution of 1945, Art. 1, Sections 10, 15 and 19, V.A.M.S. The Motion also sought the suppression of other items searched for and seized at the time of or immediately following the arrest of Cobb. The Motion was sustained as to most of the items and overruled as to the shell casings found by Dunton in Cobb's back yard; as indicated, these shells were admitted into evidence on the trial of the case.

It is Cobb's contention that the arrest was made without probable cause; that the shells found by Dunton were the result of a search and that the search was unlawful because not incident to a legal arrest. Respondent contends that there was probable cause to arrest Cobb, and also that the actions of Dunton did not constitute a "search" in the Constitutional sense because the shells were in plain view and Officer Dunton had a right to be where he was and to pick up what was seen by him to be lying on the open ground.

■ Prior to the arrest of appellant Sheriff Quade and other officers conducted an investigation of the homicide. An autopsy on the body of the deceased was performed and on Saturday morning, March 15, 1969, the pathologist informed the sheriff that the deceased died from .22 and .25 caliber bullet wounds. The sheriff knew that there had been .22 and .25 caliber shell casings found near the body of the deceased. He had been told that Cobb and Stancliff were seen very near the scene of the crime in Cobb's car during the time within which the robbery and homicide occurred, and had been told that Cobb had been in recent possession of the same type of weapons that had been used to kill the deceased. Additionally, Shirley Stancliff, the former wife of Lucky Vance Stancliff, was interviewed by officers about noon on Saturday, March 15, 1969. The details of what she told the officers at that time do not appear in the transcript of the hearing on the motion to suppress.

However, appellant filed in this Court and in this cause a portion of the transcript of the Stancliff trial in connection with another point Cobb makes on this appeal. That transcript makes it clear that Shirley was questioned on Saturday, March 15, 1969, with reference to her seeing and being with Stancliff and Cobb around midnight on March 14, 1969, and shortly after midnight into the morning of March 15, 1969, and that she told the officers that Cobb and Stancliff were at the intersection of I-44 and Route O around 12:45 AM on March 15, 1969.

The foregoing information was in possession of Sheriff Quade when, at about 7:30 PM on Saturday, March 15, 1969, he decided to arrest Cobb and Stancliff. He directed other officers to arrest Cobb while he and other officers arrested Stancliff. This information constituted a sufficient probable cause basis to arrest Cobb. That is not, however, the only basis for holding that the shells found by Dunton were properly admitted into evidence.

■ As stated, supra, the evidence shows that the shells found by Dunton were lying on the open ground and some of them were seen by him before he ever went into the house. Had it not been at nighttime, the shells would have been clearly visible to anyone on the premises. The use of a flashlight to see that which would be in plain view in the daytime does not convert that which would not be a search in daylight into a search in the Constitutional sense, at nighttime. United States v. Callahan, D.Minn., 256 F.Supp. 739, 745; United States v. Wright, 146 U. S.App.D.C. 126, 449 F.2d 1355.

■■ The shells found by Dunton were not the basis for the arrest. The officers knew a homicide had been committed and Cobb's name appeared prominently as a likely suspect. The officers had a duty to continue with their investigation of the homicide and at least had a right to seek an interview with Cobb, and to go upon his premises to do so. State v. Gott, Mo., 456

S.W.2d 38. Cobb had a right to speak or not speak as he chose. The officers had a right to take reasonable precautions while on Cobb's premises to prevent Cobb's possible escape as well as for their own protection. To this end Dunton and others were stationed outside the house near Cobb's rear door. " 'a police officer entering upon land in performance of his lawful duty is a licensee * * * the license being conferred by law.' " State v. Gott, supra; State v. Tarantola, Mo., 461 S.W. 2d 848, 851.

In State v. Tarantola, supra, officers, lawfully on defendant's premises and in defendant's back yard, observed certain items in plain view in defendant's back yard and took possession of them. This Court held that such did not constitute a "search" in a constitutional sense, citing Davis v. United States, 9 Cir., 327 F.2d 301; United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202; and State v. Hawkins, Mo., 240 S. W.2d 688.

■ The Court is entirely cognizant of the fact that the officers in the instant case went to Cobb's house to arrest him rather than to interview him, and further that the officers described their conduct in looking for and finding the shells as a "search". Nevertheless, whether or not the conduct of Dunton was or was not a "search," as that term is used in the applicable portions of the United States and Missouri Constitutions, must be viewed objectively and not exclusively on what the officers characterized their actions to be.

■ The Court holds that Officer Dunton was lawfully on the appellant's premises and his actions in finding and taking possession of the spent shells, which were in plain view, did not constitute a "search" in the Constitutional sense. State v. Tarantola, supra. The trial court did not err in overruling appellant's motion to suppress this evidence nor in admitting the same into evidence in the trial of this cause.

■ Appellant's next point is that the Court erred in admitting a .22 caliber pistol into evidence because the information charges appellant with murder in the first degree with a .25 caliber pistol. This same point is made with reference to certain .32 caliber shell casings which were found at the scene of the homicide.

Appellant contends the foregoing constituted a "fatal variance", citing State v. Reed, Mo., 55 S.W. 278. The validity of the proposition regarding "fatal variance" stated in State v. Reed has been questioned in State v. Rizor, Mo., 182 S.W.2d 525, and State v. Brinkley, Mo., 193 S.W.2d 49, 55. In any event, State v. Reed is not controlling here because there was evidence from which the jury could find that deceased died from wounds inflicted by both .25 and .22 caliber bullets.

The record reflects that Exhibit 15, the .32 caliber shell casing about which appellant complains, was not offered in evidence. The points are overruled.

■ Appellant next complains the trial court erred in giving Instruction VI, which was, "The Court further instructs you that, when two or more persons knowingly act together in the commission of an unlawful act or purpose, then whatever either does in the furtherance of such unlawful act or purpose is in law the act and deed of each of such persons, and this is true whether or not each of such persons is personally present at the actual time the offense in question was actually committed."

Appellant contends the foregoing permitted the jury to convict defendant on a theory of conspiracy. The instruction is an abstract proposition of law and certainly not a model. Other instructions set forth those facts that the jury must find in order to find defendant guilty of murder in the first degree. They required, inter alia, that the jury find that Cobb was present and he either "wilfully, deliberately, feloniously, premeditatedly and of his

malice aforethought, did acting alone or jointly with another person" kill Ferguson by shooting him with an .25 automatic pistol or that ". . . Ferguson was shot and killed by defendant Terry Cobb, acting alone or jointly with another, while the defendant Terry Cobb was robbing the said Ferguson . . . or while Terry Cobb was present knowing of such intent by another to rob and aiding, assisting or abetting another in such robbery . . .."

Instruction VI did not allow the jury to convict defendant without defendant being present during some portion of the robbery and homicide, for it informed the jury that "when two or more persons knowingly *act together in the commission* of an unlawful act . . ." that the act of one becomes the act of the other and that, in effect, such is the case even though Cobb, while acting together with another, may have been in the car when Ferguson was killed by the other person, or at some place around the scene but not actually at the precise spot where Ferguson was killed.

The instructions must be read together, and when that is done in the instant case, it is seen that the instruction did require that Cobb be present during part of the robbery and homicide and that he have, then and there, knowingly acted together with another.

In State v. Farmer, Mo., 111 S.W.2d 76, cited by appellant, the charge was robbery. There was evidence that defendant was present and held a gun on the bank's cashier during the robbery. Defendant offered substantial evidence of alibi. The Court said that the instruction there given told the jury in the first two paragraphs that where there is a conspiracy to commit a crime, it is not necessary that all of the conspirators be present at the actual commission thereof and, therefore, if defendant, Wilson Wade, and Griffith conspired to commit the crime charged, then from the time the conspiracy was formed until its accomplishment or abandonment the act of one was the act of all. The Court held

there was no evidence to authorize a finding of conspiracy among the three men to commit the crime charged before the commission thereof. The Court held the instruction to be prejudicially erroneous because it referred to a prior conspiracy and must have been understood by the jury as authorizing a finding that defendant, Griffith and Wade conspired on the Moberly trip (two or three weeks earlier) to rob the bank. The Court held there was no evidence to support a finding that such a conspiracy took place but that the instruction would be understood by the jury to authorize a conviction on the theory of such a conspiracy even though the defendant did not participate in the robbery itself.

In the instant case there was no reference to any prior conspiracy nor is it reasonably subject to the interpretation, when read in conjunction with the other instructions, that the jury could convict defendant of murder in the first degree without knowing participation by defendant in part of the robbery and homicide.

The instruction complained of is not recommended; however, the giving of it did not constitute prejudicial error. The point is overruled.

Appellant asserts error in the giving of Instruction XIII, which required the jury to determine guilt or innocence and, second, to assess punishment, if found guilty, and, third, if after due deliberation the jury was unable to agree on punishment they could so state and the court would assess punishment. The jury returned their verdict finding defendant guilty of murder in the first degree and stated that they were unable to agree on punishment. Subsequently the Court sentenced appellant to death. Murder in the first degree is punishable by life imprisonment or death, § 559.030, RSMo 1969.

Appellant's complaint here is that the jury did not deliberate on punishment at all as required by the instruction. Because of the action we must take with reference to the imposition of the death penalty pur-

suant to Furman v. Georgia, No. 69–5003, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346; Stewart v. Massachusetts, No. 71–5446, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed. 2d 744; Duisen v. Missouri, 428 S.W.2d 169; No. 69–5008, 408 U.S. 935, 92 S.Ct. 2855, 33 L.Ed.2d 749; Terry v. Missouri, 472 S.W.2d 426; 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763; and Moore v. Illinois, No. 69–5001, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706; we need not decide this point. This is so because since the death penalty cannot be imposed the only alternative punishment available under the statute is life imprisonment.

■ Next appellant contends the Court erred in overruling appellant's objection to the argument of the prosecutor that "Mr. Cobb and Mr. Stancliff . . . shot Richard Ferguson" and that "Stancliff and Cobb did this together and are equally guilty" on the ground that this argument was not supported by the evidence. The record demonstrates that the argument complained of was supported by evidence. The point is overruled.

■ Next the appellant contends the Court erred in permitting the prosecutor to say in his opening statement that the state would prove that appellant "pulled the trigger of the .25 caliber pistol and killed Richard Ferguson" on the grounds that the evidence would not and did not so prove and that the statement was made to inflame, prejudice and mislead the jury. The statements by the prosecutor were conclusionary in nature and, in effect, told the jury the state would prove its charge of first-degree murder, for, later in the same opening statement, the prosecutor told the jury that "we have no witness who is alive to testify that Terry Cobb pulled the trigger . . ." The cases of State v. Levy, Mo., 170 S.W. 1114, and State v. Stillman, Mo., 310 S.W.2d 886, do not support appellant's position. The point is overruled.

■ Appellant next contends the judgment should be reversed on the ground that the witness Shirley Stancliff testified inconsistently and at variance in this case with her testimony in the companion case of State v. Stancliff, supra, in that the witness, on November 18 and 19, 1969, charged that her testimony in the Stancliff case was the result of threats and coercion directed at her by certain police officers; that she did not know the "kind of a weapon" she fired at the Cobb home.

Appellant has filed a copy of that portion of the *Stancliff* record wherein Shirley Stancliff was interrogated out of the hearing of the jury regarding her claims of coercion by certain officers. It also includes her testimony before the jury in State v. Stancliff. The instant case was tried prior to Stancliff trial. The claimed conflict concerns the testimony of Shirley in identifying the .22 caliber automatic pistol used in the homicide as the gun she previously shot in Cobb's back yard. In this case, which was tried before Stancliff's case, she testified that she shot "A .22 automatic" in Cobb's back yard. She was shown a .22 caliber automatic and asked if she recognized it. Her answer was, "They had a .22 automatic, and it looks like it"; that "It looks like it. It looks just like the one I shot"; "It's the same size as the one I shot, and looks like it"; "the barrel looks like the one I shot"; "All I can say is that it sure looks like it"; "It's exactly like it."

Subsequently, in State v. Stancliff, Shirley testified that she shot a .22 in Cobb's back yard. When shown the .22 caliber automatic used in the homicide and asked if she recognized it, she said, "Not for sure. But I did shoot a .22." "If they all look alike except the serial number, looks like what I shot." She also testified that the gun she shot was "this type weapon." "It was a .22 automatic." She didn't know the make of the automatic she shot. Appellant cites no authority supporting his position that this Court could reverse a judgment based upon what a witness testified to in another case. In any event, the testimony of Shirley Stancliff in the two cases does

not evidence any marked variance, although it does appear that she was somewhat more positive in her identification of the .22 caliber automatic in the Cobb case than she was in the case of her former husband, Lucky Vance Stancliff. The point is overruled.

 Appellant's final point is that the Court erred in sustaining the state's challenges for cause of three members of the panel following their answers to questions pertaining to the death penalty, citing *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. In *Furman v. Georgia*, No. 69–5003, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346; *Jackson v. Georgia*, 408 U.S. 236, 92 S.Ct. 2726, 33 L.Ed.2d 346; and *Branch v. Texas*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, all decided June 29, 1972, the Supreme Court of the United States held the death penalty under statutes such as those in Missouri to be constitutionally impermissible. On the same date in the cases of *Duisen v. Missouri*, 428 S.W.2d 169; No. 69–5008, 408 U.S. 935, 92 S.Ct. 2855, 33 L.Ed.2d 749, and *Terry v. Missouri*, 472 S.W.2d 426; No. 71–6138, 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763, the United States Supreme Court applied *Furman v. Georgia*, supra, to first degree murder convictions under the Missouri statutes and vacated the death penalty imposed in those two Missouri cases. Inasmuch as the imposition of the death penalty under the Missouri statute cannot be carried out, it is unnecessary for the Court to consider the claim of noncompliance with the *Witherspoon* standards. *Moore v. Illinois*, No. 69–5001, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706, 1972.

 Since the decisions of the United States Supreme Court in the cases cited, supra, prevent the death penalty in the instant case from being carried out, the only alternative punishment remaining under our first degree murder statute is life imprisonment, § 559.030, V.A.M.S. The punishment assessed in this case, being constitutionally unauthorized, the Court hereby reduces the sentence imposed to life imprisonment. Section 547.280, V.A.M.S.; Supreme Court Rule 28.15, V.A.M.R.; *State v. Starkey*, Mo., 26 S.W.2d 956; *State v. Harris*, 337 Mo. 1052, 87 S.W.2d 1026; *State v. Melton*, Mo., 92 S.W.2d 107; *State v. Satterfield*, Mo., 336 S.W.2d 509; *State v. Rentschler*, Mo., 444 S.W.2d 453.

It is further ordered that the clerk of this Court forthwith forward a certified copy of this order and judgment to the Warden of the Missouri State Penitentiary at Jefferson City, Missouri, and the Missouri Department of Corrections, Jefferson City, Missouri.

As corrected, the judgment of the Circuit Court is affirmed.

All of the Judges concur.