**STATE of Missouri, Respondent,**

v.

**George Edward GIBBS, Appellant.**

**No. WD 30626.**

Missouri Court of Appeals,
Western District.

May 5, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 9, 1980.

Thomas J. Cox, Jr., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

By the verdicts of a jury, appellant was convicted of the commission of the crimes (Count I), carrying a concealed weapon, and (Count II) possession of over 35 grams of marijuana. Upon a finding that appellant was a second offender, the court sentenced him to three years imprisonment in the Division of Corrections on each count, the sentences to run concurrently. Appellant's Point I is that the court erred in overruling his motion for directed verdict upon the charge of carrying a concealed weapon because the evidence did not show beyond a reasonable doubt that the weapon was not discernible by ordinary observation and that defendant had an intent to conceal. Point II is that the motion for directed verdict was improperly overruled on the charge of unlawful possession of a controlled substance because the evidence did not show beyond a reasonable doubt that appellant had any controlled substance intentionally and knowingly in his possession or under his control. Other points will be set forth below.

On March 25, 1977, Trooper J. B. Martin, of the Highway Patrol, was on duty in Clinton County, Missouri, with Trooper R. W. Johnson, on the east edge of Cameron, and observed a motor vehicle violation of a Corvette travelling southbound on the off ramp of I–35 and Route BB, being the wrong way for the ramp. The vehicle then turned northbound and proceeded until Martin caught up with it and stopped it. The driver was appellant, whom Martin told he would be arrested for driving the wrong way on the ramp. Johnson approached the vehicle from the passenger side, shined his flashlight in and brought a .380 Mauser automatic pistol to Martin. Martin unloaded the weapon and placed appellant under arrest for carrying it concealed. Upon looking in the car, and making an "inventory", Martin found another clip for the pistol in the dash, and he saw a large plastic garbage bag, not sealed, lying in the rear compartment right behind the two seats of the Corvette. He took the garbage bag to St. Joseph, and it was there locked in an evidence locker, and later was picked up by the chemist.

Trooper R. W. Johnson testified that he ran a wanted check on appellant's car after Martin got out of the patrol car on stopping the Corvette. He then went to the right or passenger side of the vehicle, and shined his flashlight in it. "Q. What did you see, if anything? A. Well, after I got to the right front, and by looking directly into the right side of the windshield I could see what I believed to be a weapon lying under the driver's seat at the—well, right at the edge of the driver's seat." He walked around the car, opened the door and retrieved the weapon which was fully loaded. Further testimony: "Q. And where was State's Exhibit Four lying? A. The weapon? Q. Yes. A. It was lying under the seat. Q. Could you see it from the driver's seat as you looked in? A. No. I could see it on the— like I say, by walking around to the right front and shined through the windshield, not through the side window, but through the windshield, and I could see the weapon under the seat at that angle." On cross-examination: "Q. And you came around the car shining your light in, and you got to the right front of the windshield at 2 o'clock in the morning and you shined your light in and you saw what part of this weapon? A. As I recall it was the butt that was forward, in under the seat. Q. By forward you mean toward the front of the motor vehicle? A. Yes, sir. Q. Okay. And a Corvette is a very low slung car? A. Yes, sir. Q. And it has bucket seats? A. Very thin bucket seats, yes." At the time Johnson retrieved the weapon, appellant was outside the vehicle with Trooper Martin.

§ 564.610, RSMo 1978 [now § 571.115, to which the former statute was transferred] in pertinent parts, provides: "If any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, * * * he shall, upon conviction, be punished by imprisonment by the division of corrections for not more than five years, or by imprisonment in the county jail not less than fifty days nor more than one year, but nothing contained in this section shall apply * * * to persons

traveling in a continuous journey peaceably through this state."

As to the element of concealment under the statute, *State v. Bordeaux*, 337 S.W.2d 47, 49[4] (Mo.1960), says: "Generally, the test of concealment is whether the weapon is so carried as not to be discernible by ordinary observation. (Citing Missouri cases.) This is in accord with the general rule applied in other jurisdictions. 43 A.L. R.2d 492, 510, 512." This statement is repeated and Bordeaux cited in *State v. Cavin*, 555 S.W.2d 653, 654[1, 2] (Mo.App.1977), which states further, "Defendants contend, and we agree, that a weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions. It may be concealed, however, where it is discernible only from one particular vantage point. *State v. Miles*, 124 Mo.App. 283, 101 S.W. 671 (1907)." In the *Miles* case, the facts were that "appellant sat quietly in his [train] seat with his coat off, holding the pistol in one hand, but partially concealed by his vest and pants. According to state's evidence, no part of the pistol was in open view, and could only be seen by looking in a certain direction, and from a certain point." Held, to create a jury question as to whether appellant had the pistol concealed on his person, and obviously that evidence satisfied the *Cavin* statement of the law that the weapon may be concealed where it is discernible only from one particular vantage point, and that is the question under the facts in this case as they relate to appellant's Point I contention that the evidence did not show beyond a reasonable doubt that the weapon was not discernible by ordinary observation. Giving to Trooper Johnson's testimony and the inferences to be drawn therefrom its most favorable light, it shows this: He could not see the weapon from the driver's side of the Corvette, nor through the right side window, but he saw it lying under the driver's seat, with its butt sticking toward the front of the car *only* when he shined his light down toward the thin bucket seat from the right front side of the windshield. From this evidence, the jury could conclude that the weapon, being carried in the car and readily accessible to appellant while driving the car, was not discernible by ordinary observation. Point I is overruled.

Going now to Point III, under which appellant asserts that the court erred in admitting any evidence of possession of a controlled substance because the evidence was obtained pursuant to an illegal and improper search and seizure, the state responds first that appellant did not properly raise the issue in his motion for new trial. A fair reading of appellant's motion shows that the issue was presented to the trial court. On motion to suppress the evidence, which was overruled, the evidence was this: Trooper Martin had stopped appellant for driving the wrong way down a ramp and the two were standing toward the rear of appellant's Corvette where he was being interrogated as to that incident. After Trooper Johnson retrieved the weapon from under the driver's seat of the car and laid it on its trunk, appellant was placed under arrest for carrying a concealed weapon, at which time Martin did not advise appellant of his rights nor did he question him. Then Martin made an inventory of appellant's vehicle and found a plastic bag which contained a green leafy substance which he believed to be marijuana. Martin did not ask appellant for permission to search the car, and appellant did not in his presence make any belligerent, threatening or any other statement that caused him to be fearful of him. The plastic bag was lying on the flat part behind the passenger and driver's seat in the Corvette, there being no rear seat but just a flat compartment, and the plastic bag was accessible from the driver's seat. When Martin first observed the bag, he was on the passenger side of the vehicle, "just looking in and I seen it laying in the back." He was looking in the window of the car with a flashlight. On further cross-examination by the state's attorney, Martin testified that he had made 30 or 40 drug related arrests, and plastic bags, such as the one he seized, are commonly used for transporting controlled substances. Trooper Johnson testified also that after he

found the first weapon, he had no reason to believe that there was another weapon in the car "because I had no way of knowing whether there was or was not." In fact, he later did not find another weapon.

It is unnecessary to consider whether the search of the Corvette and the seizure of the plastic bag were incidents of the arrest of appellant for carrying a concealed weapon justifiable upon the theory of a protective search for weapons which might be used by the arrestee, or to prevent the destruction of any incriminating evidence in his possession. The latter element is, however, in this case. See *State v. Dayton*, 535 S.W.2d 479, 484, et seq. (Mo.App. 1976), for a discussion of the rules justifying warrantless searches. Rather this seizure may be and is held valid upon the plain view doctrine. As noted, Trooper Martin shined his flashlight into the rear compartment of the Corvette. "The use of a flashlight to see that which would be in plain view in the daytime does not convert that which would not be a search in daylight into a search in the Constitutional sense, at nighttime." *State v. Cobb*, 484 S.W.2d 196, 199[2] (Mo. banc 1972). Lying on the compartment floor was the plastic bag in plain view of Trooper Martin by the use of his flashlight. Knowing that such bags were commonly used to transport controlled substances, and having the further facts that appellant had in his possession a weapon, and that he appeared to be nervous, after being stopped, Martin was authorized to seize the plastic bag upon his reasonable belief that its contents might offend against the law. "The inquiry, then, is whether the discovery of the evidence under the circumstances would warrant a police officer of reasonable caution to believe that an offense has been or is being committed and that the object in plain view is evidence which incriminates the accused." *Dayton*, supra, page 486, and cases cited. See *State v. Venezia*, 515 S.W.2d 492 (Mo. banc 1974), where although the issue was not seizure of an object in plain view, the facts were these: Defendant was arrested for lewd and indecent conduct. The officer asked him and the companions to get out of the car and then he saw a small yellow envelope which, since he had been trained in the identification of narcotics, he thought contained marijuana. He opened the envelope and it appeared to contain marijuana, so he arrested defendant for violating the controlled substance law. He then opened a zipper-type case and found a fully loaded revolver, admitted to be owned by defendant, who was then arrested on the weapons charge. See also, more in point, *State v. Hawkins*, 482 S.W.2d 477 (Mo.1972), where the officer, being familiar with marijuana cigarettes, shown his flashlight on the front seat of the vehicle, and saw a hand-rolled cigarette which he reasonably believed to contain marijuana. Its seizure was held to be permissible under the "plain view" doctrine. Page 479[1], and cases cited. The trial court did not err in finding the existent probable cause for the seizure of the plastic bag and in admitting the marijuana into evidence at the trial.

Appellant thought that Trooper Martin's search of the contents of the bag was unreasonable. Martin "field tested" the contents and thought it to be marijuana. Opening the seized bag to determine its contents was not unreasonable. See and compare *State v. Brasel*, 538 S.W.2d 325 (Mo. banc 1976), where defendant was arrested in a motel room upon suspicion of unlawful possession of controlled substances. A search of an unlocked attache case on a chair four feet from defendant was approved, the court being unable on the record to conclude that defendant could not, by a quick movement, reach the attache case and obtain a weapon concealed therein or destroy evidence contained in the case. Point III is overruled.

Going back to Point II by which appellant contends that there was no proof that he had any controlled substance intentionally and knowingly in his possession or under his control, these are elements of the offense which the state must prove beyond a reasonable doubt. *State v. Pearson*, 519 S.W.2d 354, 356[1–4] (Mo.App.1975), which holds also, "In a case such as this, knowl-

edge is rarely directly demonstrable but, rather, is ordinarily shown by the circumstances of the defendant's possession of the prohibited substance. *State v. Scarlett*, 486 S.W.2d 409, 410[1] (Mo.1972)." See *State v. Burns*, 457 S.W.2d 721 (Mo.1970), where *State v. Virdure*, 371 S.W.2d 196 (Mo.1963), is cited and commented upon. That case held that from the fact that defendant was in possession of his automobile and premises when the marijuana was discovered therein, and the inferences to be deduced therefrom, the jury could reasonably find that defendant knew the narcotic drug was upon and in his property. Here, the marijuana was in appellant's Corvette, within his easy reach. It was no small, incidental amount, but as the evidence showed, the plastic bag contained over 1,700 grams of marijuana. It was not concealed in the car. Appellant had a loaded gun under the seat. Under the above cases, these circumstances authorized the jury to infer that appellant knew the controlled substance was in the car under his control. Point II is overruled.

■ Appellant contends that Instruction No. 7 is a modified version of MAI–CR 14.10, and is prejudicial to him by its inclusion of paragraph "Second, that there was more than thirty-five grams of the drug known as marihuana, and * * *." MAI–CR 14.10 indeed does not contain this paragraph, but at its end is the authorization to the jury to fix the punishment. This would be, according to the evidence, whether the amount of controlled substance in this case exceeded 35 grams, a felony, the punishment would be for imprisonment of not more than 5 years; and if less than that amount, each on a first offense, imprisonment in the county jail for not more than one year, or a fine of not more than $1,000, or both, a misdemeanor, § 195.200, RSMo 1978. But here the appellant was alleged to be, and so found, a second offender, and thus the court and not the jury would fix the punishment. Under these circumstances, the court would have to know whether the jury found the possession of marijuana to be more than 35 grams, to authorize it to impose the felony punishment. It is true that deviation from MAI–CR is error, but

its prejudicial effect is to be judicially determined. *State v. Grant*, 560 S.W.2d 39, 44[9–12] (Mo.App.1977), and cases cited. The instruction does require, contrary to the contention, the jury to find the 35 grams of marijuana in appellant's possession because of a clear reference to the element of possession in the preceding paragraph. No prejudicial error appears from the giving of Instruction No. 7, and Point IV, raising that issue, is overruled.

■ The jury deliberated seven minutes before returning a verdict of appellant's guilt of the two charges. He claims that this short time of deliberation denied him his right to a fair and impartial jury. The evidence of the commission of both crimes was simple and short. Appellant presented no evidence. *State v. Hayes*, 518 S.W.2d 40, 48[10] (Mo. banc 1975), controls in its holding, on an alleged contention that the jury was out only six minutes, that there was nothing in the record to indicate a need for extended deliberations, the court saying, "The state's evidence was simple and short. Defendant offered no evidence. The case was not complicated", and the court refused to presume bias and prejudice or a failure of the jury to reach a proper conclusion, even assuming that the length of the jurors' deliberation was correct. Point V is ruled against appellant.

■ By Point VI, appellant urges that the court erred in not giving an instruction under the privilege of carrying a weapon while travelling in a continuous journey peaceably through the state, under § 564.-610, supra. This matter was not included in the motion for new trial and is therefore not preserved for review, and no evidence was presented as to that defense which would require the court to give an instruction on it as a part of the law of the case, and which would require review under the plain error Rule 27.20. The state here presented no evidence as to where appellant had been or where he was going, so there is nothing to show that he was travelling in a continuous journey, or that he had gone beyond his circle of friends as found in

*State v. Cooper,* 563 S.W.2d 784 (Mo.App. 1978); and see *State v. Mason,* 571 S.W.2d 246 (Mo. banc 1978). The point is disallowed.

■ By his last point, appellant contends that the trial court erred in imposing a (concurrent) sentence of three years after the trial when it offered on its own motion before trial a sentence of two years. According to the record, what happened was this: Counsel for appellant stated to the court that there had been some plea bargaining on the two charged counts, each bearing a maximum punishment of five years imprisonment. Counsel advised the court that he had relayed to appellant by telephone that in the event he desired to withdraw his plea of not guilty to the two counts and enter a plea of guilty that the punishment would be two years in the Department of Corrections without the possibility of probation or parole. The court interjected the question that the two year sentence, as it understood it, would be given on one count with the other count dismissed, to which the counsel for appellant agreed. The court stated that the proposed plea would preclude the possibility of probation given by the court, which would not preclude appellant from getting parole from the institution, "but there wouldn't be any bench probation or parole." Counsel then addressed appellant: "You understood when we were talking about probation and parole that you might be paroled after you were incarcerated but you would not be eligible—not eligible, I don't want to say eligible—you would not be granted probation or parole by Judge Sloan if you entered a plea of guilty. That was your understanding? You understood that? MR. GIBBS: No. I thought that meant that I would not get any kind of parole whatsoever. THE COURT: No. It doesn't mean that. MR. GIBBS: Like I told Mr. Paden, that I just couldn't do that after having so much time down at Armco. [The report of presentence investigation attached to the transcript shows that appellant earned about $1,800 per month in employment at Armco Steel Company.] THE COURT: That would not preclude you from being considered in the regular—MR. GIBBS: I would still have to go down there. THE COURT: And make your application there. MR. GIBBS: And I would probably lose my job anyway. * * * THE COURT: I wanted to clarify that in the record because it is slightly different, there were other concessions being made to him such as a dismissal of one count of the said information. The only thing was that it was a commitment by the Court and after that then it becomes a matter of their decision at the institution and his parole would be before the Board there. MR. PADEN: Yes. THE COURT: Now do you understand? MR. GIBBS: Yes, sir. The COURT: And are you still answering the same way that you did before? MR. GIBBS: Yes, sir. THE COURT: Do you want to proceed at this time? MR. GIBBS: Yes, sir. THE COURT: All right. With that understanding—do you have any record to make at this time? MR. McELWAIN: No, your Honor. THE COURT: All right. Gentlemen, we will proceed with the trial."

It is apparent from the preceding recitation that appellant did not plead guilty, and he did not accede to the only thing held out to him—that he would not get bench probation, but any parole would be considered by the Board of Probation and Parole, after he arrived at the Division of Corrections.

The record here shows that the trial judge was not the same one who conducted the pre-trial proceedings upon the motion to suppress evidence. Thus, it is reasonable to assume that the trial judge had no knowledge of the facts of the case at the time the plea bargaining was going on, and when those facts came out during trial, and thereafter upon consideration of the presentence investigation report, the trial judge could determine that the plea bargain offer of two years imprisonment was inappropriate. There is no suggestion in the record that appellant would be penalized because of his election to stand trial by jury. There is no hint of vindictiveness on the part of the trial court because appellant did not plead guilty. Nothing appears other than that

appellant's sentence was based upon the facts which appeared at trial, one of which was the amount of marijuana found in his possession, and his past history. Upon its facts that the defendant was given a greater sentence upon retrial after appeal, in the nature of a penalty for exercising that right, *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is inapposite. Appellant's last point is overruled.

The judgment is affirmed.

All concur.