**CITY OF BOLIVAR, Plaintiff–Respondent,**

v.

**Jimmy HAGAR, Defendant–Appellant.**

**No. 21318.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 12, 1997.

Richard D. Bender, Sherwood, Honecker & Bender, Springfield, for Defendant–Appellant.

John W. Kallenbach, Bolivar, for Plaintiff–Respondent.

GARRISON, Presiding Judge.

Jimmy Hagar ("Defendant") was convicted by the trial court of violating a Bolivar, Missouri city ordinance which proscribes carrying "concealed upon or about his person, a dangerous or deadly weapon." On this appeal, he contends that the evidence was insufficient to prove that the weapon involved was "concealed." We affirm.

In reviewing to determine if the evidence was sufficient to support a convic-

tion, this court accepts as true all of the evidence favorable to the prosecution, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). We do not weigh the evidence, but rather determine whether there was sufficient evidence from which the trial court could have reasonably found Defendant guilty. *State v. Wilson*, 846 S.W.2d 796, 797 (Mo.App. S.D.1993). Viewed in that fashion, the evidence indicates that shortly after 2:00 A.M. on February 22, 1995, Bolivar Police Officer Rita Sanders stopped a 1978 Monte Carlo because she suspected that the driver was intoxicated. Officer Tom Faulkner arrived to act as a back-up as Officer Sanders was approaching the driver's side of the car. Defendant's brother, Hugh Hagar, was the driver, Randy Thurman sat in the middle of the front seat, and Defendant was in the front passenger seat. Officer Sanders spent three to five minutes at the driver's window before asking Hugh Hagar to get out of the vehicle and eventually arresting him for driving while intoxicated. During that time, she did not see a weapon of any kind in the car. Thurman testified that the gun may not have been visible because of the passengers in the car.

Hugh Hagar told Officer Sanders that he wanted Defendant to drive the car from the scene. When Officer Sanders went back to the car, she saw a shotgun shell on the passenger side floorboard, and asked Defendant to step from the car as a safety measure. When she opened the passenger side door of the car, she saw the grip of a gun under the passenger seat which she had not observed before, although she had been by the passenger door for approximately two minutes, and had seen the shotgun shell in the passenger side floorboard from that location. She said that the gun was under the seat pointed toward the steering column, with only the grip visible when the door was opened. She then retrieved the gun which she described as a short barrel shotgun with a shell in the chamber.

Officer Faulkner testified that when Officer Sanders went to the driver's side of the car, he went around to the passenger side and observed the Defendant reaching underneath the seat and "fiddling" with something. Defendant straightened up, however, when Faulkner moved closer to the car. Officer Faulkner told Officer Sanders about Defendant's movements when she took Hugh Hagar back to the patrol car. He testified that he was standing beside Officer Sanders when she went back to the Monte Carlo to talk with Defendant, but did not see any part of the gun until the passenger door was opened. The gun was in the location where Defendant had been reaching earlier.

In his sole point relied on, Defendant contends that there was insufficient evidence to prove that the gun was concealed. He argues that both officers testified that the butt of the gun was visible as soon as the door of the car was opened, and that there was no showing that the gun was not discernible upon ordinary observation.

The pertinent provisions of the Bolivar City Code are substantially the same as § 571.030.1(1) RSMo 1994. Both proscribe carrying a weapon which is "concealed upon or about" the person of the defendant. Concealment is an essential element of the offense charged. *State v. Payne*, 654 S.W.2d 139, 141 (Mo.App. E.D.1983). The test of concealment is whether the weapon is so carried as not to be discernible by ordinary observation. *State v. Bordeaux*, 337 S.W.2d 47, 49 (Mo.1960).

In *State v. Purlee*, 839 S.W.2d 584, 590 (Mo. banc 1992), the court quoted with approval language from *State v. Cavin*, 555 S.W.2d 653, 654 (Mo.App.1977), discussing concealment when the weapon is not fully covered or enclosed:

A weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions. It may be concealed, however, where it is discernible only from one particular vantage point.

The *Purlee* court affirmed the defendant's conviction, saying that the evidence indicated that the weapon was far from plain view, was not discernible to an ordinary observer approaching the vehicle, and could be seen only from a single vantage point after entering

the vehicle. 839 S.W.2d at 591. The court concluded by saying:

> [W]e hold that a weapon being carried in a vehicle is concealed within the meaning of the unlawful use statute whenever the weapon is (1) not readily and practically visible to a person approaching the vehicle under ordinary circumstances and (2) within easy reach of any of the vehicle's occupants and (3) if the weapon is a firearm, it is operational and loaded, or if not loaded, ammunition is within easy reach of any of the vehicle's occupants.

*Id.*

In *State v. Patterson*, 624 S.W.2d 11, 13 (Mo.1981), the court said, in affirming a conviction:

> The jury could reasonably find that the sawed-off shotgun was placed by appellant upon the floor of the truck directly under the driver's seat, that it could not be seen by a person outside the truck, and that its presence was not discernible by ordinary observation. Therefore, it was concealed.

Likewise, in *State v. Gibbs*, 600 S.W.2d 594 (Mo.App. W.D.1980), an officer stopped a vehicle for a traffic violation, but did not see the gun in question until looking through the front window and seeing the butt of a gun partially under the driver's seat. In affirming the conviction, the court said:

> [The officer] could not see the weapon from the driver's side of the Corvette, nor through the right side window, but he saw it lying under the driver's seat, with its butt sticking toward the front of the car *only* when he shined his light down toward the thin bucket seat from the right front side of the windshield. From this evidence, the jury could conclude that the weapon, being carried in the car and readily accessible to appellant, while driving the car, was not *discernible by ordinary observation.* (emphasis in original).

*Id.* at 597. Darkness may also be a factor in determining whether a weapon was discernible by ordinary observation. *See State v. Williams*, 481 S.W.2d 1, 3 (Mo.1972).

In the instant case, Officer Sanders was at the driver's and passenger side windows several minutes without seeing any part of the gun, although she did see a shell on the same side of the floorboard as the grip of the gun. No part of the gun, however, was observed until the door was opened. Considering the evidence and inferences in this case in the light most favorable to the judgment, there was sufficient evidence from which the trial court could have found that no part of the gun in question was visible on ordinary observation until the passenger door was opened. We therefore conclude that there was sufficient evidence to support a finding that the gun was concealed.

The judgment is affirmed.

PREWITT and CROW, JJ., concur.