UNITED STATES of America,
Plaintiff,

v.

Tommy Joe POINTER, Defendant.

Crim. A. No. 23697-3.

United States District Court,
W. D. Missouri, W. D.

June 8, 1972.

Wendell K. Smith, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Lewis Pierce, Kansas City, Mo., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

WILLIAM H. BECKER, Chief Judge.

Defendant has been charged by a grand jury indictment with possession of a sawed-off double barrel shotgun in violation of Sections 5861(d) and 5871, Title 26, United States Code. Defendant has moved to suppress any and all evidence obtained by federal officers in a search and seizure made on the premises in possession of defendant on December 17, 1971. The grounds of the motion to suppress are that the search was conducted in violation of defendant's constitutional rights under the Fourth Amendment of the United States Constitution and in violation of Rule 41(c), F.R.Crim.P., in that the search was conducted and the seizure made on premises and in a truck in excess of the authority of the warrant; that the search and seizure was not incident to a valid arrest; and that there was no probable cause to believe that the shotgun seized was within the truck in which it was found, parked to the rear of a building described in the warrant. The search warrant return stated that a .12 gauge Western Brand shotgun shell was also seized during the course of the search.

In response to defendant's motion to suppress, the government contends that the search and seizure of the shotgun (1) was made under the authority of a valid search warrant, (2) was incident to a valid arrest, and (3) was in plain view in a vehicle and therefore was subject to seizure without a warrant.

The parties have agreed that no additional evidence or oral arguments on defendant's motion need be heard, and that the motion should be decided on the written briefs, affidavits, and documents found in the Court file.

The search warrant in question was issued by the Honorable Elmo B. Hunter, District Judge for the United States District Court for the Western District of Missouri, containing the following description of the property to be searched:

" . . . the premises known as Clover Leaf D-X Service Station, a white, two-story brick building, with gray composition shingle roof having two large glass windows facing east with a display sign with letters 'D-X' affixed to the face of building above the front entrance, having six gas pumps in the drive, located on the west side of Missouri State Route 65 ³⁄₁₀'s of a mile north of the junction of Highway 65 and Interstate I-70 in Saline County, State of Missouri."

The search warrant was issued upon affidavits for a search warrant made by Federal Agent David L. Neiman and a citizen, Mr. Bobbie Joe Yokeley. In his affidavit in support of the search warrant, Agent Neiman stated:

"1. That he is duly commissioned and acting Special Investigator of the United States Treasury Department, Alcohol, Tobacco and Firearms, Kansas City, Missouri.

"2. That on December 16, 1971, Jimmie Dean Yokeley advised that in the summer of 1971, he observed a .12 gauge double barrel sawed-off shotgun in the D-X Service Station located ³⁄₁₀'s of a mile north of State route 65 and Interstate 70 in Saline County, Missouri. Jimmie Dean Yokeley also advised several people in the community had also observed the shotgun in the service station.

"3. That on December 16, 1971, Henry Hoff, Sheriff of Saline County advised me that approximately two weeks ago he had taken a report of a disturbance at the D-X Service Station at the junction of I-70 and Highway 65 in which a person was assaulted with a sawed-off shotgun by an employee of the station.

"4. Based on a telephone conversation held on December 17, 1971, with James B. Cain, Firearms Enforcement Officer of the National Firearms Record and Registration Office, I was advised personally by Mr. Cain that he had searched the official records and no record of registration, transfer of manufacture was located on any type of sawed-off shotgun being registered to Thomas Joe Pointer, Marshall, Saline County, Missouri."

In his affidavit in support of the search warrant, Mr. Bobbie Joe Yokeley stated:

"1. That I am 34 years old, married and have four children. I am presently self-employed and co-owner of Yokeley's MFA at the intersection of I-70 and U.S. 65 highways in Saline, County Missouri, and have been so employed for about five years.

"2. That on December 15, 1971, at approximately 10:15 a. m., I went to the Cloverleaf D-X station located just north of I-70 on Highway 65 in Saline, County, Missouri, to pick up a truck driver who had been staying in a motel at that location the night before. As I stopped my truck near the station and cafe, a man known to me as Thomas Joe Pointer motioned for me to get out of my truck and I did not respond. At that time, Mr. Pointer then stepped up onto the gas tank of the truck and struck me on the left side of my face. As he attempted to strike me again, I grabbed him by the jacket and shook him. He freed himself and stepped back to the ground. Mr. Pointer told me if I didn't get off

his property he was going to shoot me. Mr. Pointer went into the office of the D-X service station and I observed him with an object about 16 inches long in his hand. I shouted at the truck driver I was to pick up and told him to meet me on the state service road just east of the station. As I pulled off the driveway of the station and turned onto the service road, I saw Mr. Pointer running across the driveway with what I observed to be a sawed-off shotgun in his possession. I observed the shotgun to be a double barreled shotgun being approximately 16 inches in overall length. I stopped my truck to pick up the truck driver and Mr. Pointer fired one round from the shotgun into the right side of my truck.

"3. I left the area immediately and went to my service station where I notified the Saline County, Missouri, Sheriff's Department and advised them of what had happened."

## SEIZURE OF THE SHOTGUN

It is clear from the affidavits quoted above that Mr. Yokeley had seen the shotgun in question "on the premises known as Clover Leaf D-X Service Station" which included the described building which was located thereon. It is equally clear that the "premises" described in the warrant authorized a search not only of the building but also of the appurtenant premises on which the building, pumps, driveways and parking areas were located. The marshal's return shows that the shotgun was found in a truck parked on the described premises.

The government argues that "premises", when used in a search warrant for the search of a commercial service station, refers to land and the tenements and appurtenances thereto citing United States v. Meyer (C.A.8) 417 F.2d 1020, which supports its contentions. In the *Meyer* case, the warrant authorized a search of premises "known as 80 acres in the name of Otto Lewis Meyer and Margie M. Meyer." The Court held that the warrant authorized a search of buildings on the land described as well as the land. The description in the warrant in the case at bar is similar to the description in the warrant in *Meyer*. Here, there is a clear reference to the premises known as Clover Leaf D-X Service Station. In addition, there is a description of a building on "the premises . . . having six gas pumps in the drive." From the affidavits supporting the search warrant herein, there was sufficient probable cause shown at the time of the issuance of the warrant to believe that the shotgun would be somewhere on the "premises" including, but not limited to, the described building. Pointer had been seen in possession of the shotgun emerging from the office and on the outside of the building.

From the facts in the warrant, Judge Hunter could find that the shotgun would be found somewhere on the premises and not necessarily in the building, in light of the affidavit of Bobby Joe Yokeley stating that Pointer had taken the shotgun from the building and carried it onto the driveway where he fired it into the side of Yokeley's truck. While the authority to search is limited to the place described in the warrant and does not include additional or different places, Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126, the affidavits supported a search of the premises as well as the building. If only the building were to be searched, the "premises" including "six gas pumps in the drive" would not have been described. The prevailing view is that the designation of the place to be searched is sufficient if the officer to whom the warrant is directed is enabled to locate the place to be searched with certainty. Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757. Although search warrants should describe the place to be searched with particularity, the search warrant should not be read hypertechnically or unreasonably. Steele v. United States, *supra*. While it is not necessary to the decision, it is noted that when, as here, the area to be

searched is a commercial property open to the public and the search is conducted during business hours, the requirements of reasonableness are less strict than the requirements of a search of private premises. Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (involving search of service station). A commercial service station open to the public is not to be equated with a home and private appurtenant premises. This case presents a stronger factual basis for upholding the search than that found in *Davis.* Here, unlike *Davis,* the initial entry by the officers on the commercial premises was supported by a valid search warrant.

The uncontroverted affidavit of Special Investigator Harper, submitted with the government's suggestions in opposition to defendant's motion to suppress, shows that while lawfully searching the trash barrels to the immediate rear of the service station, he noticed a spent shotgun shell lying about two feet from the pickup truck. He proceeded to where the shell was located, picked it up and looked inside the truck where he saw "what appeared to be the butt of a sawed-off shotgun protruding from beneath a jacket located on the seat of the truck." The government correctly contends that the shotgun was thus in "plain view" of Investigator Harper.

■ The plain view doctrine is an exception to the initial proposition that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment . . . ." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. It is operative here only if Investigator Harper (1) had the right to be in the position to have the view of the shotgun, Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, and (2) the discovery of the shotgun was inadvertent. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, 585.

■ Investigator Harper clearly had a right to be on the commercial premises outside the building and in close proximity to the truck when he noticed the shotgun lying on the seat of the truck. The valid prior justification for the initial entry onto defendant's property [1] justified Investigator Harper's presence at the place where he saw the shotgun. There is no indication from the briefs, affidavits or other papers herein that the federal agents knew that the shotgun would be found in a truck parked to the rear of the building described in the warrant, and on the premises. It is clear from Harper's affidavit that when he approached the truck it was for the purpose of seizing the shotgun shell lying in plain view about two feet from the truck. After seizing the shotgun shell he looked inside the truck where he saw the shotgun. It thus appears that the discovery of the shotgun, lying in plain view in the truck, was "inadvertent" within the meaning of Coolidge v. New Hampshire, *supra.*

Finding that the shotgun was in plain view of Investigator Harper, that Harper was in a place where he had a right to be when he sighted the shotgun, and that the discovery of the shotgun inside the truck was inadvertent, the seizure of the shotgun was lawful and it may be introduced into evidence. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202; Harris v. United States, *supra*; United States v. Molkenbur (C.A.8) 430 F.2d 563.

■■ The government also contends that the seizure of the shotgun was lawful under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94, which reaffirmed the consistently recognized view that searches of vehicles with probable cause but without a warrant have been deemed reasonable without requiring proof of exigent circum-

---

1. As noted above, the entrance onto defendant's property is justified by the search warrant and by the fact that the search was of a commercial premises made during business hours. Davis v. United States, *supra.*

stances beyond the fact that an automobile or other moving vehicle was involved. See Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L. Ed. 629. But in Kaufman v. United States (C.A.8) 453 F.2d 798 the Court, in considering the impact of Coolidge v. New Hampshire, *supra,* on the law of search and seizure, stated in footnote 1:

> "Our understanding of the holding of Coolidge v. New Hampshire, supra, is the same as the understanding expressed by Justice White in his dissent in that case 91 S.Ct. 2022, 29 L.Ed.2d at page 524, where he stated as follows:
>
>> " 'The majority now approves warrantless searches of vehicles in motion when seized. On the other hand, warrantless, probable-cause searches of parked but movable vehicles in some situations would be valid only upon proof of exigent circumstances justifying the search.' "

Therefore, if the search of the truck in the case at bar is to be upheld under the moving vehicle exception, there must be a finding that first, there was probable cause to search and second, that there were "exigent circumstances" accompanying the search.

As stated previously in this order, the federal officers reasonably believed that the weapon would be found on the premises described in the search warrant. It was only subsequent to their arrival at the scene of the search that Investigator Harper discovered in plain view the spent .12 gauge shotgun shell lying in close proximity to the truck. He had probable cause to believe that the weapon was on the premises and that it was an illegal shotgun. To show probable cause "[i]t is enough if the apparent facts which have come to [the arresting officer's] attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor [herein a shotgun] is illegally possessed in the automobile to be searched." Husty v. United States, *supra,* at 51 S. Ct. 242, 75 L.Ed. 632. The belief of Investigator Harper that the weapon was on the premises, his knowledge that the weapon was a shotgun, and the discovery of a spent shotgun shell in close proximity to the truck and in plain view gave him probable cause to believe that the weapon was illegally possessed and probably in the truck.

Unlike Coolidge v. New Hampshire, *supra,* and Kaufman v. United States, *supra,* the defendant herein was not under arrest at the time of the search. Further, there was probable cause to believe that defendant was armed or that the weapon was easily accessible to him if not seized. Defendant's father was present at the scene while the search was being conducted and may have driven the truck out of the jurisdiction in which the warrant would necessarily have been sought.[2] A special detail to guard the truck while a search warrant was sought would have been inconvenient and impractical, possibly subject to the same legal challenge presented here. As stated in Chambers v. Maroney, *supra,* there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 90 S.Ct. at 1981, 26 L.Ed.2d at 428.

Because Investigator Harper had probable cause to search the truck which developed after arriving at the scene of the search and because "exigent circum-

---

2. Although the truck in question had a flat tire and an outdated license, the federal officers were advised that the truck was used by the operators of the service station to haul away trash and therefore knew that it was operable. It was reasonable to assume that the flat tire could be quickly replaced or repaired in a service station.

stances" existed, the search of the truck without a warrant and the seizure of the shotgun were lawful under the moving vehicle exception. Chambers v. Maroney, *supra*; Carroll v. United States, *supra*.

## SEIZURE OF THE SHOTGUN SHELL

 The search warrant herein described the property to be seized as "a firearm, to wit: a sawed-off double barrel shotgun . . .", making no mention of any other property, specifically a shotgun shell, to be seized. The Fourth Amendment requires that a search warrant particularly describe "the place to be searched, and the persons or things to be seized." Marron v. United States, 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L. Ed. 231, 237. The shotgun shell therefore, could not have been seized pursuant to the search warrant in the case at bar.

■ The seizure of the shotgun shell was lawful however under the "plain view" exception to the requirement that searches be conducted pursuant to a search warrant. As stated previously in this order, Investigator Harper had the right to be in the position to have a view of the shotgun shell because he was on a commercial premises during working hours, Davis v. United States, *supra*, and because he was there pursuant to a valid search warrant. It appears from the facts as agreed to by the parties that Investigator Harper was not searching the truck or the area immediately surrounding the truck when he noticed the spent shotgun shell. The discovery of the spent shell, under the facts stated herein, was clearly inadvertently made while searching the premises for the shotgun described in the warrant. When the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character,[3] that incriminating evidence may be seized and introduced into evidence.

Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, 789. The distinction between "mere evidence" and the seizure of instrumentalities of the crime was rejected in Warden, Maryland Penitentiary v. Hayden, *supra*. Defendant's motion to suppress the shotgun shell from evidence will therefore be denied.

---

3. In light of the affidavit of Mr. Yokeley, the spent shotgun shell was clearly evidence of an incriminating character.