**UNITED STATES of America,
Appellee,**

v.

**George Robert IRONS and Loretta
Fay Irons, Appellants.**

**No. 72–1309.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 6, 1972.

Decided March 9, 1973.

Certiorari Denied June 18, 1973.
See 93 S.Ct. 3020.

Jack S. Nordby, St. Paul, Minn., for appellants.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MEHAFFY, BRIGHT and STEPHENSON, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendants, George Robert Irons, Jr. (hereafter Irons) [1] and his wife, Loretta Fay Irons (hereafter Mrs. Irons), were convicted by trial to a jury under an indictment which charged them with a violation of 18 U.S.C. § 2113(a) for attempting to commit a felony by entering

---

1. In the district court defendant's name appears as George R. Irons, Jr. and on appeal the "Jr." is omitted. Reference is to the same party.

the State Bank of Dennison, Minnesota, the deposits of which were insured by the Federal Deposit Insurance Corporation. Each defendant was sentenced to a term of two years. Mrs. Irons' sentence contained a proviso that after she had served six months of her sentence the remainder was to be suspended and she was placed on probation for eighteen months.

Defendants were jointly tried and represented by the same appointed counsel. Upon the close of the government's case defense counsel moved for a judgment of acquittal in behalf of Mrs. Irons. This motion was denied and was followed by a motion for severance with the request that the case against Mrs. Irons be submitted to the jury at that point. This motion also was denied. There had been no request for separate counsel at any level prior to this time. Apparently after the close of the government's case defense counsel concluded that the government had failed to make a case against Mrs. Irons and that her best interests would be served by resting her case at this point. Thereafter Irons took the witness stand as the only witness for the defense.

For reasons hereinafter set forth, we sustain the conviction of Irons and reverse the conviction as to Mrs. Irons.

The issues on appeal are the sufficiency of the evidence to sustain the conviction in both cases and whether defendants were denied their right to separate attorneys.

*The case against Irons.* The offense was committed in the small village of Dennison, Minnesota, a community of some two hundred fifty residents, approximately fifty miles south of Minneapolis-St. Paul. The few business buildings of Dennison are located on Dennison's Main Street and run for about five blocks. They include the State Bank of Dennison. Eugene Gillispie, an employee of the local grain elevator, also serves Dennison as its constable and only law enforcement officer. The constable and his wife were at home and had fallen asleep while listening to television. The constable's home is on Thorpe Street, one block east of Main Street and parallel to it, and is approximately three hundred fifty feet from the rear of the bank building. Mrs. Gillispie awakened at about 3:00 a. m. and noticed a station wagon on her front lawn. The constable went outside to observe, took the license number of the station wagon, went back in the house, armed himself and called the Northfield, Minnesota police, giving them the license number on the station wagon which was registered in the name of Irons. The constable then took a position where he could observe the figures in the shadows at the rear of the bank building. There is a path that runs across the vacant area in an east-west direction from the rear of the bank to the constable's home. This property is virtually vacant but does contain a storage shed or two. When the constable and his wife first stepped outside his house, they heard a steady pounding noise emanating from the direction of the rear of the bank. This pounding continued up until the arrival of the Northfield police. Additionally, the constable observed a flashlight in operation. Upon the arrival of the Northfield police the pounding ceased and two figures were seen to emerge from the shadows behind the bank and run in the direction of the station wagon parked on the lawn of the constable's house. The vantage point from which the constable was looking gave him an unobstructed view of the rear of the bank. He observed that the two figures paused a moment by the storage shed and continued to run in the direction of the station wagon. When the two figures were about thirty feet from the constable he ordered them to stop but one of the figures ran off and the other (Irons) continued towards the constable feigning intoxication. Not only the constable but Clifford Witt, a deputy sheriff, testified that there was nothing to indicate Irons' intoxication.

In their investigation of the area the officers found a gaping hole approximately two feet by three feet in the rear

wall of the bank building and some burglar tools, including an eight pound maul, a punch bar and a piece of pipe. The officers observed a reddish substance or dust on Irons' pants and shoes which resembled the brick dust on the rear wall of the bank. Their search of Irons' station wagon produced a police radio with inoperative batteries and the dome light cover which was found on the rear seat without a light bulb in its receptacle. When the officers were canvassing the wooded area, they found Mrs. Irons lying on the ground behind a tree. This was approximately ten minutes after the officers had arrived.

It was at this point that the government rested and counsel elected not to put Mrs. Irons on the stand.

Irons categorically denied that he participated in the crime or ever was near the rear of the bank building. If the jury saw fit to believe the testimony of the constable and officers, we have no alternative but to affirm his conviction. We must view the evidence in the light most favorable to the jury verdict, United States v. Skillman, 442 F.2d 542 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971), and we must accept all reasonable inferences that tend to support the jury's action. *See* United States v. Lodwick, 410 F.2d 1202, 1204 (8th Cir.), cert. denied, 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969); Phelps v. United States, 160 F.2d 858 (8th Cir. 1947).

This is a case where there could be no doubt about the commission of the crime or that Irons was one of the principals in the guilty act. The constable had taken a position that would permit him to see the figures emerge from the rear of the bank building upon the arrival of the police cars from Northfield. He had the two in his vision from the time the figures first emerged from the shadows at the rear of the building until they came within thirty feet of him and he ordered them to halt whereupon one took off in another direction but Irons continued until met by the constable and other officers. If the government's case

had not been nearly as strong, Irons' testimony about leaving his home in St. Paul en route to another state without luggage and stopping in Dennison where he had never been before, had no relatives and did not even know anyone there, merely because he had learned from a waitress that they could find a dance in progress in the little village of Dennison, is certainly somewhat incredible and did not impress the jury.

*The case against Mrs. Irons.* Mrs. Irons was found behind a tree in the wooded area between the rear of the bank and the station wagon that belonged to her husband in the constable's yard. This places her at the scene of the crime and no doubt with knowledge that a crime was being committed but nothing more. The government contended that she was serving as a lookout and should be convicted under 18 U.S.C. § 2, the aider and abettor statute. There is no evidence that she participated in the criminal act either before or at the time it was committed. She did not have the flashlight which was in use by one of the figures who was seen to depart from the rear of the bank. The canvass of the officers immediately made of the entire area disclosed nothing but her presence. She had nothing to signal with.

█ It is well settled that absent some evidence of participation we cannot sustain the conviction. United States v. McDonnell, 472 F.2d 1153 (8th Cir. 1973); United States v. Thomas, 469 F.2d 145 (8th Cir. 1972); United States v. Hill, 464 F.2d 1287 (8th Cir. 1972); United States v. Kelton, 446 F.2d 669 (8th Cir. 1971); Baker v. United States, 395 F.2d 368 (8th Cir. 1968).

█ *Single attorney representation of co-defendants.* There was no suggestion at any time prior to trial when defendants were represented by retained counsel or by court appointed counsel in this case that there was any need for separate counsel or separate trial, and, of course, no indication that there might possibly be a conflict of interests. We have held in an exhaustive opinion,

United States v. Williams, 429 F.2d 158 (8th Cir.), cert. denied, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970), that joint representation of co-defendants is not per se violative of the sixth amendment and that no reversible error is committed by the district court in assigning a single attorney to represent two or more defendants in a pending criminal action absent evidence of an actual conflict of interests or evidence pointing to a substantial possibility of a conflict of interests between the co-defendants. Our disposition of Mrs. Irons' case makes unnecessary any lengthy discussion of this subject as there remains no substantial possibility of prejudice or justification for disturbing the judgment of the conviction as to Irons. *Compare* Glasser v. United States, 315 U.S. 60, 77, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359, 361 (1965).

Accordingly, the judgment is affirmed as to George Robert Irons and reversed with the order to dismiss as to Loretta Fay Irons.