**Terry COBB, Petitioner,**

v.

**Donald W. WYRICK, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.**

**Civ. A. No. 73CV49–W–1–3.**

United States District Court,
W. D. Missouri, W. D.

June 20, 1974.

---

Terry Cobb, pro se.

Gene E. Voights, First Asst. Atty. Gen., of Mo., Jefferson City, Mo., for respondent.

FINAL JUDGMENT DENYING PETITION FOR A WRIT OF HABEAS CORPUS WITH RESPECT TO PETITIONER'S CONTENTIONS THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING OF GUILTY AND THAT THE COURT ERRED IN GIVING INSTRUCTION NO. 6, AND DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS WITH RESPECT TO THE REMAINING UNEXHAUSTED CONTENTIONS

WILLIAM H. BECKER, Chief Judge.

This is a petition for a writ of habeas corpus by a state prisoner in custody at the Missouri State Penitentiary at Jefferson City, Missouri. Petitioner seeks an adjudication that his state conviction and sentence were illegally secured and imposed upon him in violation of his federal constitutional rights. Petitioner has requested leave to proceed in *forma pauperis*. By order of February 12, 1973, petitioner was granted leave to proceed in *forma pauperis*.

Petitioner states that he was found guilty by a jury in the Circuit Court of Barry County, Missouri, of murder in the first degree; that on the 9th day of October, 1969, he was adjudged guilty and sentenced to death, which sentence was later reduced to a term of life imprisonment; that he appealed from the judgment and imposition of sentence to the Missouri Supreme Court; that the judgment and sentence was affirmed in State of Missouri v. Cobb, 484 S.W.2d 196 (Mo.Sup. en banc 1972); that petitioner has filed no prior postconviction motions, applications or petitions in this or any other court with respect to the judgment and sentence under review herein; and that he was represented by counsel at his arraignment and plea, his trial, and on appeal from the judgment and sentence to the Missouri Supreme Court.

Petitioner seeks an adjudication that his conviction and sentence were secured and imposed upon him illegally in violation of his federal constitutional rights. In support thereof, petitioner states the following three basic grounds: (A) petitioner was denied due process of law because there was insufficient evidence to support the jury's finding of guilty; (B) petitioner's rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States were violated because (1) the trial court erred in giving Instruction No. 5, thereby authorizing a conviction for first degree murder if the jury found petitioner guilty of robbery, and (2) the trial court erred in giving Instruction No. 6, thereby authorizing the jury to find petitioner guilty as charged if the jury found a conspiracy, which he states was not charged in the information; and (C) over petitioner's objection, evidence was improperly admitted at trial, which evidence was the product of an unconstitutional and unlawful arrest, search and seizure and in violation of petitioner's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

On February 12, 1973, Judge John W. Oliver of this Court, to whom this cause was originally assigned, entered an order granting petitioner leave to proceed in *forma pauperis* and directing the respondent to show cause why the petition herein for a writ of habeas corpus should not be granted.

On March 5, 1973, counsel for respondent filed herein a response to the order to show cause, including therewith the following documents: (1) a photocopy of the transcript of the record on appeal from the Circuit Court of Barry County, Missouri; and (2) a photocopy of the decision of the Missouri Supreme Court on petitioner's appeal from the judgment and sentence of the Circuit Court of Barry County, Missouri.

On March 13, 1973, petitioner filed herein his *pro se* "Traverse to Respondent's Answer to Order to Show Cause," therein contending that he had exhausted his available state remedies with respect to all the grounds raised herein. In his traverse, petitioner also reiterates

the facts and legal contentions in support of the three basic grounds stated in his petition herein.

On May 17, 1973, an order was entered transferring this cause to the undersigned pursuant to Local Rule 13D of the United States District Court for the Western District of Missouri.[1]

■ Under the provisions of Section 2254, Title 28, United States Code, a state prisoner, in the absence of exceptional circumstances not shown to be present in the case at bar, must fully exhaust his currently available and adequate state remedies before invoking federal habeas corpus jurisdiction. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Under subsection (c) of Section 2254, Title 28, United States Code, a state prisoner's state remedies are ordinarily not considered exhausted so long as he may present his contentions to the state courts by "any available procedure." In the case at bar, the petition herein and other records available to this Court, including a photocopy of petitioner's transcript on appeal to the Missouri Supreme Court and the official report of petitioner's appeal to the Missouri Supreme Court in State of Missouri v. Cobb, 484 S.W.2d 196 (Mo. Sup. en banc 1972), show that not all of the legal, factual and evidentiary contentions raised by petitioner in the case at bar were presented to the Missouri Supreme Court on petitioner's direct appeal.

■ From the record and pleadings, it is evident that ground B(1) was never presented to the Missouri Supreme Court. In ground B(1), petitioner contends that the trial court erred in giving Instruction No. 5, thereby authorizing a conviction for first degree murder if the jury found petitioner guilty of robbery. In his traverse, petitioner states that Lucky Vance Stancliff, who was also found guilty with respect to the same murder in question, raised this precise issue on his appeal to the Missouri Supreme Court. See, State of Missouri v. Stancliff, 467 S.W.2d 26 (Mo.Sup.1971). Petitioner contends that the same issue raised by Stancliff on appeal was effectively decided adversely to him and therefore "[i]t would be 'frivolous' for Petitioner to now raise that ground in the State Courts in view of the Supreme Courts (sic) decision in the companion case and, merely prolong and delay this litigation to no avail." By the above statement, petitioner apparently seeks permission to deliberately bypass currently available state remedies with respect to ground B(1). Such an attempt cannot be permitted by this Court because of the clearly established federal policy against such an attempted deliberate bypass of currently available state remedies. Murch v. Mottram, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), reh. denied, 409 U.S. 1119, 93 S.Ct. 894, 34 L.Ed.2d 704 (1973); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Deckard v. Swenson, 335 F. Supp. 992 (W.D.Mo.1971); Taggert v. Swenson, 313 F.Supp. 146 (W.D.Mo. 1970); Vera v. Beto, 332 F.Supp. 1197 (S.D.Tex.1971); Wilwording v. Swenson, Civil Action No. 73CV55-W-3 (W. D.Mo. October 19, 1973), affirmed (8th Cir. No. 73–1837, May 21, 1974); cf. Sanders v. United States, 373 U.S. 1, 17–18, 83 S.Ct. 1068, 1078–1079, 10 L. Ed.2d 148, 163 (1963).

■ On May 17, 1974, an order was entered substituting Donald W. Wyrick, present Warden of the Missouri State Penitentiary at Jefferson City, Missouri, as the correct respondent in this action,[2]

---

1. In the order of transfer entered by Judge Oliver on May 17, 1973, an obvious clerical error was made with respect to the reference to "Local Rule 13(b)." The correct rule governing the transfers of civil cases (including habeas corpus cases) is Local Rule 13D of the United States District Court for the Western District of Missouri.

2. Petitioner named the State of Missouri as the respondent in this action. However, in a habeas corpus case, petitioner's present

and petitioner was directed to state in writing whether he intended to seek a ruling from the state courts on his contention (ground B(1)) that the trial court erred in giving the felony murder instruction. In addition, in order to determine whether either party desired to offer any additional evidence not contained in the transcript on appeal to the Missouri Supreme Court in State of Missouri v. Cobb, 484 S.W.2d 196 (Mo. Sup. en banc 1972), on one or more of the issues stated in the petition herein, each party was directed to separately state in writing whether they desired to offer such additional evidence.

On May 25, 1974, the undersigned received a response to the above-noted order from the petitioner dated May 23, 1974. In his letter, petitioner states that he desires to offer additional evidence with respect to the "affidavit given by Shirley Stancliff" and that evidence is desired to be offered on the " . . . truth or impossibility of whether the car she was driving could have reached the high speeds necessary to go a half a mile down the road in the wrong direction, turn around, go that ½ mile back, slow down to enter the 4 lane, then accelerate to whatever speed necessary to catch the car that I was driving before 3½ miles had passed—with my speed considered just a conservative 65 to 70 MPH." Petitioner further states that he wishes "to produce for your scrutiny, Deputy Sheriff Dean Stockton of Lawrence County, and have you hear testimony concerning one Clayton Farr" in connection with their knowledge of the murder weapons in question.

On May 24, 1974, counsel for respondent filed herein a "Motion for Extension of Time to File Pleadings," requesting therein " . . . an extension until June 1, 1974, in which to comply with this Court's Order to file a statement regarding proposed evidence."

In light of petitioner's response and the inadequacy of the evidentiary record, this final judgment was prepared, thereby mooting respondent's request for an extension of time.

 From the record presented herein, it is apparent that all the evidence necessary for a final determination on the merits with respect to ground C was never fully developed in the state courts nor fully presented to the Missouri Supreme Court. Therefore the issue raised in ground C cannot presently be decided by this Court. In ground C, petitioner contends that over petitioner's objection, evidence (consisting of .22 and .25 caliber shell casings) was improperly admitted at trial, which evidence was the product of an unconstitutional and unlawful arrest, search and seizure in violation of petitioner's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

In order to show the failure of petitioner to develop and present to the Missouri Supreme Court all the evidence, the following brief synopsis of the facts is set forth.

Prior to the arrest of the petitioner, Sheriff Quade and other officers conducted an investigation of the homicide in question. An autopsy on the body of the deceased was performed on the morning of March 15, 1969. The pathologist who performed the autopsy informed the Sheriff that the deceased died from .22 and .25 caliber bullet wounds. The Sheriff also knew that .22 and .25 caliber shell casings were found at the scene of the murder. The Sheriff had been advised by Shirley Stancliff, former wife of Lucky Vance Stancliff, that the petitioner and Lucky Vance Stancliff were near the scene of the crime during the time within which the robbery and murder had occurred. The details of what she told the Sheriff

---

custodian is the proper respondent. *See,* Barnes v. United States, 445 F.2d 260 (8th Cir. 1971) ; Williams v. Missouri Department of Corrections, 463 F.2d 993 (8th Cir. 1972). Therefore, Donald W. Wyrick, Ward-

en of the Missouri State Penitentiary at Jefferson City, Missouri, is the proper respondent in this action and the substitution was accordingly made by this Court by order dated May 17, 1974.

at that time do not appear in the transcript of the hearing at petitioner's trial on the motion to suppress presented to the Missouri Supreme Court on petitioner's appeal.

On March 15, 1969, at or about 7:30 p. m., Sheriff Quade, on the basis of information he had received, decided to arrest petitioner and Stancliff. He directed other officers to arrest petitioner while he and another party arrested Stancliff.

There is no development by petitioner or the state, of the circumstances which caused Sheriff Quade to make the nighttime arrest without a warrant, in the transcript on appeal to the Missouri Supreme Court. A number of officers intending to arrest (or interview) petitioner without a warrant approached petitioner's residence early in the morning on March 16, 1969. As they approached, Deputy Sheriffs Harold Dutton and Boyd Haddock and Corporal Roy Foss, taking precaution to prevent escape, went to the rear of petitioner's house. While at the rear of the house, Deputy Sheriff Dutton, who was carrying a flashlight,[3] inadvertently noticed spent shell casings in petitioner's backyard. Dutton did not seize the shell casings at that time as he had not been ordered to do so, but waited at the rear of the house. After the lights inside the house had been turned on and Dutton could see that petitioner was in the house and had been put under control, he proceeded to the front of the house and entered. Petitioner was arrested without a warrant

and was apprised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). The officers then proceeded to "search" the house and the premises. Deputy Sheriff Dutton retrieved spent and live ammunition from an automobile parked in petitioner's garage and placed the ammunition in the left pocket of his jacket. He also retrieved the .22 and .25 caliber shell casings on the ground in petitioner's backyard.[4] These shell casings were part of the same group of shell casings which Dutton had earlier inadvertently noticed on the ground when he had stationed himself in petitioner's backyard to prevent escape. There is no indication from the record or otherwise that the officers knew that the shell casings were in petitioner's backyard, nor is there any indication that the shell casings were the basis of the arrest or that petitioner's house was approached early in the morning on March 16, 1969, in order that a search and seizure of those shell casings might have been secured. Later that day, a warrant for the arrest of the petitioner was issued by the Magistrate Court of Lawrence County, Missouri.

On June 23, 1969, counsel for petitioner filed a "Motion to Suppress Evidence" in the trial court, seeking therein to suppress, among other things, the .22 and .25 caliber shell casings found and retrieved from petitioner's backyard by Deputy Sheriff Dutton. On July 2, 1969, a hearing on that motion to suppress was held before the Honorable W.

---

3. It is apparent from the record presented to this Court that Deputy Sheriff Dutton possessed a lighted flashlight upon his entry into petitioner's backyard and that the light emitted from that flashlight permitted him to make the inadvertent viewing of the shell casings. It is unclear whether the light of the flashlight or from the windows of the house permitted him to ultimately retrieve the spent shell casings. However, the use of a light to notice that which would also be in plain view in the daytime does not transform that which would not be a search in the daytime into a search at an hour when the sun is not fully exposed. United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71

L.Ed. 1202, 1204 (1927) ; Safarik v. United States, 62 F.2d 892, 895 (8th Cir. 1933) ; United States v. Wright, 146 U.S.App.D.C. 126, 449 F.2d 1355 (1971) ; United States v. Callahan, 256 F.Supp. 739, 745 (D.Minn. 1964).

4. The transcript of the trial record discloses that during cross-examination, Deputy Sheriff Dutton testified without contradiction that he placed the shells found in the automobile in the left pocket of his jacket and the shells found in the backyard in the right pocket of his jacket. He further testified that those shells were separately maintained and were never commingled.

H. Pinnell. On August 11, 1969, the Court sustained petitioner's motion to suppress with respect to most of the evidence, but overruled the motion with respect to some evidence, including the .22 and .25 shell casings seized in petitioner's backyard.

The Missouri Supreme Court affirmed the decision of the trial court in State of Missouri v. Cobb, 484 S.W.2d 196 (Mo. Sup. en banc 1972). In its opinion, the Court held that the information possessed by Sheriff Quade on March 15, 1959, "constituted a sufficient probable cause basis to arrest Cobb" and therefore the seizure of the shells was proper. The Court did not, however, specifically hold that the seizure was "incident" to a lawful arrest under any controlling federal doctrine. The Missouri Supreme Court noted the absence in the transcript of the evidence on the motion to suppress of the details of Shirley Stancliff's interview with the Sheriff. The Missouri Supreme Court, by some concept of judicial notice, relied on a portion of the transcript in the Stancliff trial purportedly to secure the details available in that case. There is no indication that the evidentiary details of that interview were ever presented to the trial court in petitioner's case. Certainly no evidence thereof was presented by petitioner to the Missouri Supreme Court in his transcript on appeal to that court. Furthermore, the Missouri Supreme Court failed to consider the question why the arrest was made without a warrant and whether the circumstances surrounding the arrest justified the warrantless arrest. These questions were not presented to the trial court, nor was evidence developed on these issues and presented in the transcript to the Missouri Supreme Court.

The Missouri Supreme Court alternatively concluded that the officers had, at the very least, a right to interview petitioner and investigate the case, thereby necessitating entry upon petitioner's premises, including entry into his backyard for precautionary reasons. Concluding that Deputy Sheriff Dutton was lawfully upon the premises, at the rear of petitioner's house, the Missouri Supreme Court held that ". . . his actions in finding and taking possession of the spent shells, which were in plain view, did not constitute a 'search' in the Constitutional sense." State of Missouri v. Cobb, 484 S.W.2d 196, 200 (Mo.Sup. en banc 1972).

Since the officers did not have a warrant to search any part of the premises, the seizure of the shell casings must fall within one of "a few specifically established and well-delineated exceptions" to the general rule that searches and seizures must be properly judicially authorized by the issuance of a search warrant. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); accord, United States v. Blake, 484 F.2d 50, 53 (8th Cir. 1973); Root v. Gauper, 438 F.2d 361, 363 (8th Cir. 1971); United States v. Pointer, 348 F.Supp. 600 (W.D.Mo. 1972). One of these recognized exceptions to the general rule is the plain view doctrine.

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067, 1069 (1968); Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726, 743 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). An excellent analysis of the long-standing "plain view" doctrine is set forth in the landmark United States Supreme Court case of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reh. denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). As noted in the Coolidge opinion, the plain view doctrine has been applied in numerous factual contexts, one of which entails the situation wherein an officer is not searching for evidence against an accused, but nonetheless inad-

vertently comes across an incriminating object. Coolidge v. New Hampshire, 403 U.S. 443, 446, 91 S.Ct. 2022, 29 L.Ed.2d 564, 583 (1971); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Ker v. California, 374 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726, 743 (1963). *Cf.* Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), reh. denied, 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811 (1967).

The limitations on the plain view doctrine are generally stated to be as follows: (1) the plain view *alone* is never enough to justify the warrantless seizure of evidence; (2) the discovery of the evidence in plain view must be *inadvertent*; and (3) the initial intrusion or entry must be *legally justified*. *See,* Coolidge v. New Hampshire, 403 U.S. 443, 468–471, 91 S.Ct. 2022, 29 L.Ed.2d 564, 584–586 (1971); United States v. Blake, 484 F.2d 50, 57 (8th Cir. 1973); Smith v. Slayton, 484 F.2d 1188, 1190 (4th Cir. 1973); United States v. Pointer, 348 F.Supp. 600, 604 (W.D.Mo.1972).

In the case at bar, one of the principal questions to be determined is whether Deputy Sheriff Dutton was in a place he had a right to be in the sense that he was legally justified in entering petitioner's backyard, where he inadvertently noticed the .22 and .25 caliber shell casings plainly visible on the ground. *See,* United States v. Pointer, 348 F. Supp. 600, 604 (W.D.Mo.1972). The Missouri Supreme Court held on independent grounds that either (1) the arrest was based on probable cause, thereby justifying the entry into petitioner's backyard, or (2) the officers had a right to interview petitioner and investigate the case further, thereby justifying the entry into the backyard.

Neither of the grounds enunciated by the Missouri Supreme Court and the evidence in support thereof have been sufficiently developed for the state or this Court to determine the issue. First, the Missouri Supreme Court did not have before it all the evidence necessary to determine whether the warrantless arrest was based on probable cause and lawful under the circumstances. Second, the Missouri Supreme Court did not have before it, nor did it even consider, all the necessary evidence to determine whether the circumstances justified a warrantless arrest. And third, the Missouri Supreme Court did not have before it all the necessary evidence to determine whether the entry into the backyard alone, not including the approach to petitioner's front door, was justified under either of the alternative grounds stated in the Court's opinion.

Based on a thorough and careful review of the record presented to this Court, it must be concluded that with respect to the search and seizure claim, the factual record presented to the state courts was inadequate at trial and on appeal and several crucial evidentiary issues were never adequately developed. Under such circumstances, petitioner should avail himself of state plenary postconviction remedies by seeking an evidentiary hearing on a motion to vacate his sentence under Missouri Criminal Rule 27.26, V.A.M.R. in the Circuit Court of Barry County, Missouri. White v. Swenson, 261 F.Supp. 42, 63 (W.D.Mo.1966); Meller v. Swenson, 335 F.Supp. 1261 (W.D.Mo.1969). The exemplary postconviction remedy provided by Missouri Criminal Rule 27.26, V.A. M.R. is designed to give petitioner a full opportunity to supply these deficiencies of the trial record. The search and seizure claim has not been "fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438, 443 (1971). Therefore, in the absence of exceptional circumstances, not present in the case at bar, the petition should be dismissed for failure to exhaust effective currently available state postconviction remedies. White v. Swenson, *supra*; Meller v. Swenson, *supra*.

Petitioner should therefore file a motion to vacate his sentence under Missouri Criminal Rule 27.26, V.A.M.R. in

the Circuit Court of Barry County, raising grounds B(1) and C and all evidentiary contentions in respect thereto and all other grounds known to him for invalidating his state sentence. Dixon v. Missouri, 295 F.Supp. 170 (W.D.Mo. 1966); Richardson v. Swenson, 293 F. Supp. 275 (W.D.Mo.1969). From any adverse decision of the state trial court on that motion, petitioner should also appeal to the Missouri Supreme Court. In the absence of exceptional circumstances, not stated to be present in the case at bar, only when the Missouri Supreme Court, applying current federal standards and having before it an adequate evidentiary record, has ruled adversely to petitioner on the merits of those contentions can his state remedies be deemed exhausted for purposes of federal habeas corpus jurisdiction. 28 U.S.C. § 2254; Picard v. Connor, *supra*; Fay v. Noia, *supra*; White v. Swenson, *supra*; Meller v. Swenson, *supra*; Bosler v. Swenson, 423 F.2d 257 (8th Cir. 1970); Wilwording v. Swenson, 439 F. 2d 1331 (8th Cir. 1971); Russell v. Swenson, 251 F.Supp. 196 (W.D.Mo. 1966).

To save time and unproductive effort and in the discretion of this Court, petitioner's related exhausted claim stated as ground A and his unrelated exhausted claim stated as ground B(2), will both be hereinafter reviewed and considered on the merits. *See,* Tyler v. Swenson, 483 F.2d 611, 614 (8th Cir. 1973); Irby v. State of Missouri, 502 F.2d 1096, at page 1099 (8th Cir. 1974).

 In ground A, petitioner contends that the evidence was not sufficient to sustain his conviction. Generally, the question of sufficiency of evidence concerns only trial matters, not federal or constitutional questions, and therefore is not cognizable in federal habeas corpus proceedings. Robinson v. Wolff, 349 F.Supp. 514 (D.Neb.1972), affirmed, 468 F.2d 438, 440 (8th Cir. 1972); Summerville v. Cook, 438 F.2d 1196, 1197 (5th Cir. 1971), cert. denied, 403 U.S. 908, 91 S.Ct. 2216, 29 L.Ed.2d

685 (1971); Wilson v. Nebraska, 316 F.2d 84 (8th Cir. 1963). To raise a constitutional issue, it must be shown that the evidence in support of guilt is totally devoid of value or materially deficient. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); McGhee v. Sigler, 328 F.Supp. 538 (D. Neb.1971), affirmed, 455 F.2d 987 (8th Cir. 1972), cert. denied, 409 U.S. 1022, 93 S.Ct. 468, 34 L.Ed.2d 314 (1972); Lawrence v. Wainwright, 445 F.2d 281 (5th Cir. 1971). Nevertheless, even upon considering petitioner's contention that there was insufficient evidence to support the conviction, it must be concluded that a substantial submissible case against him was made and the contention is without merit.

The evidence presented was that Richard Ferguson, a service station attendant, was shot and killed at approximately 1:00 a. m., on the morning of March 15, 1969, at the Hood Texaco Station located near Interstate 44 in Barry County, Missouri. The petitioner and Lucky Vance Stancliff, who was also tried and convicted for the same murder, were together at or about 12:30 a. m., on that morning at a point approximately three miles east of the murder site. There they conversed with Shirley Stancliff, Lucky Vance Stancliff's former wife. Stancliff's former wife then proceeded with the petitioner and Stancliff down Interstate 44, toward Mt. Vernon, Missouri. After passing two exits, one of which leads to the Hood Texaco Station, Shirley Stancliff stopped and waited for the petitioner and her former husband. The two men failed to meet Shirley Stancliff, indicating they had turned off at one of the exits. Shirley Stancliff then proceeded onto Highway 66, a road the petitioner and Stancliff would have been on had they not taken the exit leading to the Hood Texaco Station. Shirley Stancliff did not see the petitioner and Stancliff on Highway 66. The killing apparently occurred at a time very close to 1:00 a. m., on March 15, 1969. The victim appeared to be dead when found at or about 1:30 a. m.

The death of the murder victim was caused by gunshot wounds from .22 and .25 caliber bullets. Spent shell casings of .22 and .25 caliber were found at the scene of the murder. The .22 and .25 caliber automatic handguns that fired the bullets were recovered along Route O about one and one-half to two miles south of the Texaco Station. Empty .22 and .25 caliber shell casings were found in petitioner's backyard in the early morning on March 16, 1969. The evidence introduced at the trial established that the guns found along Route O fired the shells found in petitioner's backyard and the bullets removed from the body of the deceased and the .22 and .25 caliber shells which were found at the scene of the murder. In his petition, the petitioner admits that the shell casings found at the scene of the crime and the shell casings found in his backyard were fired from the same weapon. Shirley Stancliff also testified that approximately two months prior to the murder she fired a .22 caliber pistol, owned by Stancliff, in the petitioner's backyard. At that time the petitioner also had a handgun which he fired in his backyard. Robert Dawson, another witness for the state, testified that petitioner exhibited a handgun to him approximately two weeks before the murder and that the handgun looked like the .25 caliber weapon which fired the fatal bullets and the shell casings found in petitioner's backyard.

A review of the record herein reveals that there was sufficient evidence, if believed, from which the jury could have found that the .25 caliber handgun in evidence was the gun that petitioner possessed; that the petitioner had possession of the same gun shortly before the robbery and murder; that this same gun was used in the robbery and killing of Richard Ferguson; that petitioner and Stancliff were near the scene of the crime at about the time of its commission; and that petitioner participated in the robbery and killing. Freeman v. Stone, 444 F.2d 113 (9th Cir. 1971); United States v. Dugan, 477 F.2d 140 (8th Cir. 1973); United States v. Henson, 456 F.2d 1045 (8th Cir. 1972); Stancliff v. Swenson, Civil Action No. 73CV48–W–3 (W.D.Mo. April 30, 1974).

In ground B(2), petitioner contends that the trial court erred in giving Instruction No. 6, which reads as follows:

"The court further instructs you that, when two or more persons knowingly act together in the commission of an unlawful act or purpose, then whatever either does in furtherance of such unlawful act or purpose is in law the act indeed of each of such persons, and this is true whether or not each of such persons is personally present at the actual time the offense in question was actually committed."

■ Absent a clear showing of error of federal constitutional dimensions or fundamental unfairness in the trial, habeas corpus will not be granted on a claim that an improper instruction was given. Young v. State of Alabama, 443 F.2d 854 (5th Cir. 1971), cert. denied, 405 U.S. 976, 92 S.Ct. 1202, 31 L.Ed.2d 251 (1972); Shepherd v. Nelson, 432 F.2d 1045 (9th Cir. 1970); Pleas v. Wainwright, 441 F.2d 56 (5th Cir. 1971); Higgins v. Wainwright, 424 F.2d 177 (5th Cir. 1970), cert. denied, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970), reh. denied, 400 U.S. 1002, 91 S.Ct. 463, 27 L.Ed.2d 455 (1971).

■ This contention was raised by petitioner on appeal before the Missouri Supreme Court, wherein it was noted that Instruction No. 6 did not allow the jury to convict petitioner without his being present during some portion of the robbery and homicide, for it informed the jury that "when two or more persons knowingly *act together in the commission* of an unlawful act," the act of one becomes the act of the other. (Emphasis added.) Thus, even though petitioner, while acting together with Stancliff, may have been in the car used in commission of the robbery and homicide, and in the escape, when Ferguson was killed, the Instruction provided that

the jury find that petitioner was at or some place around the scene, but not necessarily at the precise spot where Ferguson was murdered. In addition, it was not necessary to find, in order to convict the petitioner, that he actually did the shooting. It is enough that he participated in the crime. *See*, § 556.-170, V.A.M.S.; State of Missouri v. Holloway, 355 Mo. 217, 195 S.W.2d 662 (1946); Stidham v. Swenson, 328 F. Supp. 1291, 1293 (W.D.Mo.1970); *see generally*, United States v. Irons, 475 F.2d 40 (8th Cir. 1973); United States v. Atkins, 473 F.2d 308 (8th Cir. 1973); United States v. Thomas, 469 F.2d 145 (8th Cir. 1972); United States v. Jarboe, 374 F.Supp. 310 (W.D.Mo.1974) and cases cited therein.

The record presented does not establish that Instruction No. 6 was improper under federal constitutional standards or that it otherwise rendered the entire trial fundamentally unfair under these standards. Stidham v. Swenson, 328 F. Supp. 1291 (W.D.Mo.1970), affirmed in part and reversed in part on other grounds, 443 F.2d 1327 (8th Cir. 1971), reversed and modified on other grounds, 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972); Robinson v. Wolff, 349 F. Supp. 514 (D.Neb.1972), affirmed, 468 F.2d 438 (8th Cir. 1972).

For all the foregoing reasons, it is therefore

Ordered and adjudged that petitioner's contentions, stated as grounds B(1) and C, that the trial court erred in giving Instruction No. 5 and in admitting into evidence the .22 and .25 caliber shell casings seized in petitioner's backyard, be, and they are hereby, dismissed. It is further

Ordered and adjudged that petitioner's remaining contentions, stated as grounds A and B(2), that there was insufficient evidence to support the finding of guilt and that the Court erred in giving Instruction No. 6, be, and they are hereby, denied.